# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| KEITH SALINAS, *et al.*, | |
| Plaintiffs, | Case No.: 1:13-cv-00245-TRM-SKL |
| v. | |
| U.S. XPRESS ENTERPRISES, INC., *et al.* | |
| Defendants. | |

## REPORT AND RECOMMENDATION OF THE SPECIAL MASTER APPROVING THE COLLECTIVE ACTION SETTLEMENT

In this FLSA collective action, the Court has appointed the undersigned Special Master pursuant to Fed. R. Civ. P. 53 and stipulation of the Parties to issue a report and recommendation concerning whether the proposed FLSA collective action settlement should be approved. The Special Master recommends the Court APPROVE the settlement in its totality.

### Factual and Procedural History.

This action was filed by Angela Bolden on July 26, 2013 (ECF Doc. No. 1). In July of 2014, after Ms. Bolden accepted an offer of judgment, Keith Salinas was added to the caption and became the Named Plaintiff. (ECF Doc. No. 51). The Plaintiffs assert that U.S. Xpress Enterprises Inc. and U.S. Xpress Inc. (collectively "USX") failed to pay at least minimum wage for all hours worked by their over-the-road truck drivers while such drivers were in orientation and training. ("First Amended Complaint," ECF Doc. No. 12). During the orientation and training periods, USX paid drivers a flat daily rate which did not consider the number of hours worked by each driver. The Plaintiffs allege this amount failed to pay them at least minimum

1

wage for all hours worked based on several theories of liability. At all times, USX has denied and continues to deny that it paid drivers less than minimum wage. USX further asserted that approximately 1,400 of the collective action members signed arbitration agreements requiring them to individually arbitrate their claims. (*See* ECF Doc. No. 107).

The Plaintiffs put forth several theories as to why USX paid them less than minimum wage. First, the Plaintiffs contend that the initial classroom orientation which occurred prior to them driving constituted employment, and that they were entitled to be paid minimum wage during such periods. (*See* First Amended Complaint at ¶28). Second, the Plaintiffs contend that following the orientation, the daily rate provided in the Driver Finishing Program (an over-the-road training program that lasted approximately 4-5 weeks) failed to provide them at least the federal minimum wage for all hours worked. In support of this position, Plaintiffs argue that (1) all "on duty" DOT time constitutes compensable work; (2) all short rest breaks constitute compensable work; and (3) sleeper berth time beyond 8 hours per day constitutes compensable work. (*See* First Amended Complaint at ¶48).

The Parties engaged in significant litigation prior to attending the mediation which ultimately led to the proposed settlement. In August of 2017, the Parties filed cross-motions for partial summary judgment. (*See* ECF Doc. Nos. 163, 166). Based on the filings, the Parties appear to agree that time a driver logged in an "on duty" DOT status was compensable work time, but the Parties disputed all other issues, including the amount of damages Plaintiffs were entitled to under each of their theories. Plaintiffs claim that as to the single claim that Defendants do not appear to dispute on liability (that Defendants were required to pay drivers at least minimum wage for all hours worked in an "on duty" status), the total amount of damages was $164,385. (*See* Plaintiffs' Brief in Support of Plaintiffs' Motion for Summary Judgment at

13, ECF Doc. No. 164; Plaintiffs' Brief in Support of Plaintiffs' Motion to Approve Settlement at 7; ECF Doc. No. 192).

The remaining claims brought by Plaintiffs are subject to disputes both to liability and to damages. Both Parties have filed for summary judgment with respect to the compensability of sleeper berth periods and the time a driver spent in orientation. (*See* ECF Doc. Nos. 163, 166). As the briefing makes clear, the compensability of such time remains heavily disputed. If Plaintiffs were to prevail on their claims and obtain the full damages award as calculated by their expert, Plaintiffs state that they would be entitled to the following, not including the potential for liquidated damages: $70,513.37 for time spent in orientation ($21.75 per driver); $164,385 for unpaid on-duty time ($48.47 per driver); $1,123,260 for time spent in a truck's sleeper berth beyond eight hours per day ($334 per driver), and $5,246.60 for unpaid short rest break of 20-minutes or less ($1.60 per driver). (ECF Doc. No. 192 at 5-6).

In addition to the claims brought in the collective action, 43 individuals filed arbitration following USX's motion to compel arbitration. Those arbitrations asserts the claims brought in the collective action, along with other individual claims. This settlement resolves 35 of those arbitrations. (ECF Doc. No. 192 at 13). The remaining arbitrations either settled under separate terms or were dismissed upon agreement.

On October 3, 2017, the Parties attended a full-day mediation before the undersigned. During the mediation, both Parties acted in good faith and made reasonable compromises to reach an agreement. The proposed agreement creates a settlement fund of $2,200,000, which will fully resolve the instant matter and the thirty-five arbitrations. (Settlement Agreement at 3, ECF Doc. No. 192-2). In exchange for payment from the fund, the FLSA collective action members will release wage and hour claims "for time spent in orientation and the driver finishing

3

program." (*Id.* at 4). The arbitration claimants will release all employment related claims against Defendants. (*Id.* at 4-5).

On January 26, 2018, Plaintiffs filed their motion to approve the FLSA settlement. The motion is now ripe for consideration, and for the reasons discussed below, I recommend the Court APPROVE the Settlement in full.

## The proposed settlement fairly resolves a *bona-fide* dispute.

The law favors compromise and settlement of collective actions. *Carroll v. Blumaq Corp.*, 2010 WL 11520634 (E.D. Tenn. Nov. 15, 2010); *see also Lynn's Food Stores*, 679 F.2d 1350, 1354 (11th Cir. 1982); *Little Rock Sch. Dist. V. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Oponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (in a class action context, providing that "[a] settlement agreement is presumptively valid."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive

litigation."); Newberg On Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

A court reviewing a settlement of FLSA claims must conclude that it is "fair, reasonable, and adequate." *Carroll v. Blumaq Corp.*, 2010 WL 11520634; *see also Thompson v. United Stone, LLC, et al.*, 2015 WL 867988, at *2 (E.D. Tenn. 2016 Mar. 2, 2015) *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The court must also determine whether the settlement reflects a reasonable compromise over issues that are *actually* in dispute. *Rampersad v. Certified Installation LLC*, 2012 WL 5906878, at *1 (E.D. Tenn. Nov. 26, 2012) (citing *Lynn's Food Stores, Inc. v. United States*, 697 F.2d 1350, 1354 (11th Cir. 1982).

Courts may approve an FLSA settlement where such an agreement represents the "resolution of a bona fide dispute over FLSA provisions." *Thompson v. United Stone, LLC, et al.*, 2015 WL 867988, at *1 (E.D. Tenn. March 2, 2015) (quoting *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).

Courts reviewing whether a *bona fide* dispute exists consider the following factors: (1) the nature of the dispute; (2) the employer's business and type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to the claimed wages; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Felix v. Thai Basil At Thornton, Inc.*, 2015 U.S. Dist. LEXIS 62020, *3 (D. Colo. May 6, 2015).

The dispute here is focused on whether Plaintiffs were paid at least the federal minimum wage during the first 4-5 weeks of their employment with Defendants. During this period, Plaintiffs were in training and were paid a daily rate.

a. Plaintiffs assert that they were required to participate in a classroom orientation at the start of their employment which was not paid at the applicable minimum wage. Defendants contend that such time is pre-employment and, thus, no compensation was necessary. Regardless, Defendants paid Plaintiffs for 8 hours per day of orientation, while Plaintiffs assert the orientation lasted about 9 hours per day (rendering a total of 3 hours non-compensated). If such time was held to be work, the damages per driver on this claim would be $21.75. Whether such an initial orientation constitutes compensable work is a mixed question of law and fact. *Helde v. Knight Tranp., Inc.,* 982 F.Supp.2d 1189, 1199 (W.D. Wash., Oct. 9, 2013) (finding a factually similar orientation program for truck drivers to be *compensable*); *but see Hurst v. First Student*, 181 F.Supp.3d 827, 838-41 (D. Ore. 2016) (finding a factually similar orientation program for truck drivers to be *non-compensable*).

b. Plaintiffs contend that a substantial amount of time which over-the-road truck drivers spend over-the-road constitutes working time, including all "on duty" DOT time, short rest breaks of less than 20 minutes, *see* 29 C.F.R. §785.18 ("rest periods of short duration, running from 5 minutes to about 20 minutes … must be counted as hours worked"); sleeper berth time beyond 8 hours per day, *see* 29 C.F.R. § 785.22 (when on duty for more than 24 hours, up to 8 hours of sleep time may be credited as non-work time. While Defendants generally recognized that "on duty" DOT time was compensable, the other periods of time were subject to legal and factual disputes between the Parties. Based on the records produced in this matter, Plaintiffs estimated the aggregate (non-liquidated) damages for "on duty" time was $164,385 ($48.47 per driver), for short rest breaks was $5,426.60 ($1.60 per driver), and for sleeper berth time over eight hours was $1,123,360 ($334 per driver). Defendants contested the compensability of the rest breaks and sleeper berth time, as well as the amount of on-duty time that went unpaid. (*See* Defendants' Answer, ECF Doc. No. 16).

The settlement will provide approximately $250 per driver in the collective action, after fees, costs, and administrative expenses are paid. (ECF Doc. No. 192 at 6). This amount gives drivers full value on their "on duty" and short rest break claims (totaling $50.07 per driver) and more than 50% of the value for their sleeper berth and orientation claims. Considering the

6

inherent risks in maintaining the collective action through trial, and the legal and factual disputes surrounding the compensability of sleeper berth time, this is a fair result for collective action members.

The law regarding the compensability of sleeper berth time for over-the-road drivers continues to develop, but remains subject to significant uncertainty and risk to both sides. The most significant case to address this issue so far is *Petrone v. Werner Enterprises*, a case from the District of Nebraska which alleged that trainee drivers failed to receive minimum wage because the defendant failed to pay them for, *inter alia,* sleeper berth time in excess of 8 hours per day. The procedural history of that case alone emphasizes the risks and uncertainty to all Parties should this case not resolve.

In 2015, the *Petrone* court entered summary judgment in the plaintiffs' favor, holding that the DOL guidance, and specifically 29 C.F.R. § 785.22, the DOL Field Operations Handbook, and two opinion letters issued by the DOL, were entitled to *Auer* deference and compel trucking companies to pay over-the-road drivers for sleeper berth time in excess of 8 hours per day. 121 F.Supp.3d 860 (D. Neb. 2015) (Strom, J.) ("*Petrone I*"). But the *Petrone* court then certified its holding for interlocutory appeal to the Eighth Circuit. The Eighth Circuit denied the petition, and the case was sent to the trial court for a trial on damages.

Prior to that trial, a new judge was assigned to the case, and Werner filed a motion for reconsideration, requesting the court reverse the summary judgment grant provided to plaintiffs and instead hold that Werner was entitled to judgment as a matter of law on the sleeper berth claims. The new judge *partially* granted Werner's motion, reversed the plaintiffs' summary judgment award, but held that the issue of sleeper berth compensability was a mixed question of law and fact, and required a jury to resolve. 2017 WL 510884 (D. Neb. Feb. 2, 2017) (Smith

7

Camp, J.) ("*Petrone II*"). (vacating summary judgment award and holding that whether sleeper berth time is compensable must be determined by jury); *see also Petrone v. Werner* Order on Motion to Clarify (Smith Camp, J.) (further holding that whether sleeper berth time is compensable must be determined by jury).

The unresolved nature of these legal theories demonstrates that there is a *bona fide* dispute of an FLSA claim.

**The proposed settlement is fair, reasonable, and adequate based on the attendant risks of continued litigation.**

In reviewing whether a FLSA settlement is fair, reasonable and adequate, courts consider the following factors:

(1) The existence of fraud or collusion behind the settlement;
(2) The complexity, expense, and likely duration of the litigation;
(3) The state of the proceedings and the amount of discovery completed;
(4) The probability of Plaintiff's success on the merits;
(5) The range of possible recovery; and
(6) The Opinions of counsel.

*Nutting v Unilever Mfg. (U.S.) Inc.*, 2014 WL 2959481, at 3 (W.D. Tenn. June 13, 2014); (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, No. 2007 WL 101777, at *3 (M.D. Fla. April 2, 2007)); *see also Greene v. Hepaco, LLC*, 2014 WL 2624900 (W.D. Tenn. June 12, 2014).

The settlement agreement at issue here meets each of these factors, as outlined below.

**(1) The existence of fraud or collusion behind the settlement.**

As the individual who oversaw the mediation, I have personal knowledge that the settlement reached in this matter was not the result of fraud or collusion but instead was the result of highly qualified counsel carefully evaluating the risks and acting in good faith in the best interests of their clients. Thus, this factor weighs in favor of settlement.

8

**(2) The complexity, expense, and likely duration of the litigation.**

The potential risks of trial are exacerbated by the complexity and relatively legally-undeveloped nature of the claims (no opinions from any district court or the Sixth Circuit Court of Appeals have been issues regarding the compensability of sleeper berth time). Of the few courts which have issued opinions elsewhere in the nation, there is significant inconsistency in the results. *Compare Helde,* 982 F.Supp.2d 1189 (W.D. Wash., Oct. 9, 2013); *with Hurst,* 181 F.Supp.3d 827 (D. Ore. 2016). Plaintiffs' sleeper berth claim is so legally complex that it resulted in inconsistent results in *the same court*. *Compare Petrone I* and *Petrone II.*

The Parties have incurred significant expenses to date. As provided in Plaintiffs' request for reimbursement of litigation costs, Plaintiffs have incurred nearly $200,000 in out-of-pocket litigation costs. (*See* Decl. of Justin Swidler, ECF Doc. No. 192-1 at ¶6).

In light of the parties' relative positions, the benefits of a settlement outweighed the risk of proceeding to trial. As such, this factor weighs in favor of approval.

**(3) The state of the proceedings and the amount of discovery completed.**

The Parties have conducted upwards of 50 depositions and completed five arbitration hearings, including one before the undersigned. (ECF Doc. No. 192 at 10-11). In the collective action, there have been nearly 200 docketed items, including as stated *supra*, cross-motions for partial summary judgment. The cross-motions show that the Parties have engaged experts and have fully evaluated the strengths and weaknesses of their claims and defenses.

This factor weights in favor of settlement.

9

### (4) The probability of Plaintiff's success on the merits and the range of possible recovery.

This matter concerns several legal issues on which courts are split, one of which resulted in opposing decisions in the same court. Such legal uncertainty means that there is a wide range of outcomes should this case not resolve by settlement.

#### a. The Collective Action

Plaintiffs in the *Salinas* matter seek unpaid wages from their time spent in Defendants' Orientation program and for time spent training to become first-seat drivers for Defendants. This resulted in four claims concerning that 4-5 week period: 1) Plaintiffs' orientation claim; 2) Plaintiffs' claim that Defendants failed to pay minimum wage for all DOT "on duty" time; 3) Plaintiff's short rest break claim; and 4) Plaintiffs' claims for sleeper berth time beyond eight hours in a day.

The settlement agreement reach will provide each opt-in Plaintiffs approximately $250 (after fees/costs/administrative expenses) for releasing these claims. (ECF Doc. No. 192 at 6). While the settlement agreement does not bifurcate the award on a per-claim basis, such an award provides 100% of the damages incurred for "on duty" DOT time and the short rest break claim (totaling $50.07 per driver) while providing approximately $200 for resolution of the other claims, which should Plaintiffs have prevailed, total about $350 per driver, providing a fair value of 56% of the claimed values on such claims.

These figures are most directly a reflection in the uncertainty inherent in trying these claims before a factfinder given the current state of the law concerning each of the claims.

The amounts provided represents a fair settlement of the Plaintiffs' claims in the *Salinas* matter.

10

### b. The Arbitrations

The arbitrations concerned a number of claims that were not pursued in the *Salinas* matter, including claims, such as wrongful discharge, that are inherently individual in nature. In addition to the claims brought in *Salinas*, the thirty-five arbitration Claimants brought claims for:

1) unpaid wages for their time spent working for Defendants after the training program;
2) unpaid wages for their time spent in completing Defendants' "Upgrade" process;
3) unpaid wages for time spent travel that took them away from home overnight and occurred during regular business hours;
4) unpaid wages under the California Labor Law for time spent working in California;
5) unpaid meal and rest breaks under the California Labor Law;
6) improper wage statements under the California Labor Law;
7) various penalties as a result of the alleged violations of California Labor Law;
8) failure to reasonably investigate a dispute of a credit report under the Fair Credit Reporting Act;
9) unjust enrichment under Tennessee state law;
10) detrimental reliance Tennessee state law; and
11) wrongful termination under Tennessee and Arkansas state law;

(ECF Doc. No. 192 at 13).

Given the many additional claims that were brought by arbitration Claimants, thirty-four of these individuals will receive $5,000 with one Claimant receiving $12,000. These amounts represent higher amounts than the *Salinas* opt-in Plaintiffs will receive because the release is wider (a general employment release) in light of these individuals fully arbitrating all their employment claims, not just wage-and-hour claims for the first several weeks of their employment. (*See* ECF Doc. No. 192-2 at 4-5).

11

The payments to Claimants represent not just their additional claims, but their extensive involvement in litigating them. Ms. Pettus' $12,000 payment reflects her unique circumstances, as she alleged that she was terminated after being transported to a hospital for a life-threatening illness while over-the-road for Defendants. (ECF Doc. No. 192 at 13).

Accordingly, the Settlement Agreement is a fair representation of the uncertainty intendent in litigating complex claims in an underdeveloped area of the law.

### (5) The Opinions of Counsel

The parties were represented by experienced counsel, particularly adept at litigation wage and hour matters within the trucking industry. The settlement was reached during arm length negotiations following years of contentious litigation. Plaintiffs are represented by counsel who are well informed and practiced in collective wage and hour litigation, and are realistic and knowledgeable of the risks and benefits of the settlement. Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members. (Swidler Decl. at ¶8, ECF Doc. No 192-1). *See also Maddy v. Gen. Elec. Co.,* 2017 WL 2780741, at *7 (D.N.J. June 26, 2017) ("Plaintiffs' counsel has substantial experience litigating wage and hours class actions. Indeed, attorneys Mr. Swidler and Mr. Swartz have litigated 90 [wage and hour] cases within the last 5 years."); *Keller v. T.D. Bank, N.A.,* 2014 U.S. Dist. LEXIS 155889 14 (E.D. Pa. 2014) (finding that Mr. Swartz and Swidler "have considerable experience handling class and collective action disputes" and noting that they "represented the Named Plaintiffs and the prospective class competently, diligently, and with professionalism throughout the course of this litigation."); *Campbell v. C.R. England, Inc.,* 2015 U.S. Dist. LEXIS 134235, *18 (D. Utah Sept. 30, 2015) (Swartz Swidler, LLC "has a reputation in the trucking industry as being one of the prominent

12

firms to engage in FLSA litigation on behalf of truck drivers."). Plaintiffs' counsel has further been certified as class counsel in similar litigation wherein they represented tens of thousands of over-the-road drivers for alleged violations of state and federal minimum wage laws. *See Petrone v. Werner Enters.*, 2013 U.S. Dist. LEXIS 96375 (D. Neb. July 10, 2013); *Baouch v. Werner Enters.*, 2014 U.S. Dist. LEXIS 64981 (D. Neb. May 12, 2014).

Likewise, defense Counsel Scopelitis, Garvin, Light, Hanson & Feary, P.C. specializes in representing transportation companies and is one of the most respected law firms in the transportation industry. Defense counsel in this case have extensive and significant experience in the litigation and settlement of large complex FLSA collective actions concerning truck drivers specifically.

Thus, counsels' opinion that the settlement is fair is entitled to deference and further weighs in favor of approval.

### (6) Other Issues

The proposed settlement provides that funds from uncashed checks shall be donated to the St. Christopher's Fund. The settlement provides that Plaintiffs who do not cash their checks will still be bound to the release.

Courts routinely approve settlements where class members who do not receive payments, either because they did not file a claim form or because they did not cash their check, release claims. *See, e.g. Flores v. Alameda Cty. Indus. Inc*, No. 14-CV03011-JD, 2015 WL 3763605, at *2 (N.D. Cal. June 16, 2015) (wage-and-hour settlement without claims made process, but all class members – even those that do not cash check – release clams; unclaimed funds provided to charity); *Cancilla v. Ecolab, Inc.*, No. 12-CV-03001-JD, 2015 WL 4760318, at *2 (N.D. Cal. Aug. 12, 2015) (same); *Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, No., 2012 WL

13

12893448, at *4 (C.D. Cal. Nov. 7, 2012) (claims made settlement approved where only those who file claims will be paid; all will release claims, and the employer retains reversion); *Valencia v. Greater Omaha Packing*, No. 8:08CV161, 2014 WL 284461, at *3 (D. Neb. Jan. 23, 2014) (releasing claims of all class members but allowing a cy pres recipient to receive uncashed funds); *Rosales v. El Rancho Farms*, No. 1:12-CV-01934- AWI, 2015 WL 4460918, at *6 (E.D. Cal. July 21, 2015) ("[P]arties should have a plan for distributing unclaimed funds because many class action settlements result in unclaimed funds" and approving wage and hour settlement where only 15% filed claims but all class members released claims).

Moreover, if this case were tried and a judgment was entered – in which case all class members would be barred from bringing these claims again as a consequence of res judicata – some class members would not cash their check, and cy pres distribution of those uncashed funds would still be appropriate. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1306, 1307 (9th Cir.1990).

Thus, the Special Master finds the provision that settlement members who are provided checks but do not cash them will still be subject to the release of claims to be fair.

Additionally, the Special Master finds that the charity chosen by the settlement, the St. Christopher's Fund, (ECF Doc. No. 192-2 at 16) is an appropriate charity in which to donate the uncashed funds as the charity assists commercial truck drivers during times of crisis, and the Plaintiff class is composed of commercial truck drivers. *See* https://truckersfund.org/faq/.

For all these reasons, the Special Master recommends that the settlement be approved.

**The requested attorney's fees are reasonable and should be approved.**

Class Counsel seeks to recover its reasonable fees and out-of-pocket costs incurred in litigating this matter. Plaintiffs' counsel is seeking $880,000 in fees, which constitutes 40% of

14

the fund and 61% of its lodestar, representing a concession of more than half a million dollars from the lodesar. (ECF Doc. No. 192 at 15).

Class Counsel also seeks to recover their out of pocket expenses incurred in this lawsuit, plus the costs of administration of the settlement. The requested fee is based on the substantial work Class Counsel performed in the lawsuit and the substantial risk Class Counsel took in bringing and prosecuting the lawsuit.

Class Counsel is entitled to a fee paid out of the common fund for the benefit of the Class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980). The FLSA mandates that a Court award attorney's fees to prevailing plaintiffs. 29 U.S.C. § 216(b) (providing that courts "*shall*, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of action."). In class action suits where a fund is recovered and fees are awarded therefrom by the court, the Supreme Court has indicated that computing fees as a percentage of the common fund recovered is the proper approach. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

The FLSA contains a fee-shifting provision that provides that the prevailing party shall recover reasonable attorney's fees and litigation costs. 29 U.S.C. § 216(b). Awards of attorneys fees under the FLSA are mandatory, though the Court has discretion over the amount of fees due the attorneys. *Thompson*, at *2 (citing *Cruz v. Vel-A-Da, Inc.*, 1993 WL 659253, at *3 (N.D. Ohio May 14, 1993); *see also United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). Even where the maximum recovery of an individual employee is relatively small because the unpaid wages are relatively small, an attorney may reasonably recover more than the employee. *Thompson*, at *2 (citing *Perdomo v. Sears, Roebuck & Co.*, 1999 WL 1427752, at*10

15

(M.D. Fla. Dec. 3, 1999) ($117,629.51 in fees and costs and $17,140.84 in damages); *Heder v. City of Two Riverse*, 255 F.Supp.2d 947, 955 (E.D. Wis. 2003) ($36,204.88 in fees and costs and $270 in damages). Courts in the Sixth Circuit have surmised that the possibility of an attorney's fee award that surpasses the plaintiff's damages adds incentive for an employer to quickly and justly resolve even minor unpaid wage claims. *Thompson*, at *2 (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307*, 732 F.2d at 501).

The attorneys' fees and costs in this matter are requested as a percentage of the class recovery, which is the favored method of calculating attorneys' fees in class action cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins.*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner v. Liberty Travel, Inc.* 2011 U.S. Dist. LEXIS 38663 at *52-53 (D. NJ. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts" for wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at *53, *citing, In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009); *Lenahan,* 2006 U.S. Dist. LEXIS 60307.

Even in cases where statutory attorney's fees attach, such as the FLSA, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured . . . every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp.*

16

*Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-822 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of the "economic reality" of such arrangement); *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming settlement, overruling objectors, and holding that the district court properly used a percentage-of-the-fund calculation in computing fees despite the fact that the underlying statute provided for attorney's fees to the prevailing party).

In awarding attorney's fees under the FLSA, courts may consider several factors:

> 1) The time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

*Hensley et al. v. Eckerhart et al.* 461 U.S. 424, 433 (1983). "A court also has discretion to enhance a fee because of the public importance or other extraordinary feature of a case." *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir. 1982). Additionally, courts have suggested that a "cross-check" in the fee-award against the lodestar award method should be utilized to evaluate whether the request is fair. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see also In re AT&T Corp.*, 455 F.3d 160, 195 (3d Cir. 2006)

The Special Master has reviewed each of these factors, support of which is provided in detail in Plaintiffs' Brief in Support of Plaintiffs' Motion for Settlement Approval at pp. 18-25

17

(ECF Doc. No. 192). The Special Master finds that each of these factors weighs in favor of approving the fee, and recommends the Court approve the requested fee as fair and reasonable.

**The requested costs are reasonable and should be approved.**

"There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004). Moreover, "attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D. Pa. Jan. 4, 2001); *see also In re Fasteners Antitrust Litig.,* 2014 U.S. Dist. LEXIS 9990 (E.D. Pa. Jan. 27, 2014).

Here, Class Counsel incurred $193,922.37 in out-of-pocket costs in litigating this matter. (Swidler Decl. at 192-1 at ¶6). These costs are all documented and itemized in Mr. Swidler's declaration and were reasonably incurred in litigating these claims. (ECF Doc. No. 192-4).

Accordingly, the Special Master recommends that Plaintiffs' Counsel be reimbursed for their out-of-pocket costs totaling $193,922.37.

**The Court should appoint Angeion Group to administer the settlement and their fee shall be paid from the settlement fund.**

The Special Master has reviewed the Declaration of Steven Weisbrot, the Chief Innovation Officer of Angeion Group, LLC. (*See* Decl. of Steven Weisbrot, ECF Doc. No. 192-6). Angeion Group has significant expertise in administering class and collective settlements and is fully qualified to administer this settlement. The Special Master has reviewed the bid provided by Angeion and concludes it is reasonable for a class of this size. (*See* ECF Doc. No. 192-5).

The Special Master recommends the Court appoint Angeion Group to administer the settlement and order that Angeion's fee shall be paid by the Settlement Fund.

18

## The Court should appoint Angeion Group to administer the settlement and their fee shall be paid from the settlement fund.

Named Plaintiff Keith Salinas seeks a service award of $10,000, while Plaintiffs seek $500 service awards for each of the ten opt-in Plaintiffs that gave depositions in this matter.

"The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Bredbenner v. Liberty Travel, Inc.,* 2011 U.S. Dist. LEXIS 38663, 63-64 (D.N.J. Apr. 8, 2011). By bringing suit against a large company and having documents publicly filed with his name on them, named plaintiffs whoa ssist in class action litigation "[take] on certain risks. By bringing suit against a major company[,]... they risk their good will and job security in the industry for the benefit of the class as a whole." *Id.; see also UFCW Local 880-Retail Food v. Newmont Mining Corp.,* 32 Fed. Appx. 232, 235 (10th Cir. 2009) ("a class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class"); *Whittington v. Taco Bell of Am., Inc.,* 2013 U.S. Dist. LEXIS 161665, *24 (D. Colo. Nov. 13, 2013) (approving service payment for the named plaintiff of $7,500); *In re Bank of Am. Wage & Hour Empl. Litig.,* 2013 U.S. Dist. LEXIS 180056, *26 (D. Kan. Dec. 18, 2013) (approving service payments which in aggregate would not exceed $200,000).

The Special Master finds that these amounts are in line with the amounts customarily paid to individuals who assist in bringing class actions and should be approved. *See e.g. Whittington,* 2013 U.S. Dist. LEXIS 161665, *24 (approving service payment for the named plaintiff of &7,500); *Bredbenner,* 2011 U.S. Dist. LEXIS 38663 at *68 ($10,000 each for of the 8 named plaintiffs); *Dewey,* 728 F. Supp. 2d at 610 ($10,000); *see also Newberg on Class*

19

*Actions* § 11,38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

**Conclusion**

Based on the foregoing, the Special Master Recommends the Court ORDER:

1. The FLSA Collective Action and Arbitration Claimant Settlement ("Settlement Agreement") is approved. All Individuals identified on Exhibit 1 ("Arbitration Claimants") (identified at ECF Doc. No. 192-2 at p. 30) and Exhibit 2 ("Class Members") (identified at ECF Doc. No. 192-2 at pp. 32-108) are subject to the release of claims set forth therein.

2. Defendants, pursuant to the Settlement Agreement, shall wire $2,200,000 (Two Million, Two Hundred Thousand Dollars) to the Claims Administrator no later than 14 days following the date of this Order in accordance with the Settlement Agreement (*See* ECF Doc. No. 192-2 at p. 20);

3. Angeion Group is appointed as the Claims Administrator to distribute all payments to be made pursuant to the Settlement Agreement. Angeion Group shall distribute the Settlement Fund to all class members and arbitration claimants consistent with the Settlement Agreement, including the Service Awards contemplated for the Class Representatives and Opt-In Plaintiff Deponents and the Attorney's fees and costs as approved by the Court;

4. The Service Payments to the Named Plaintiff is approved. Named Plaintiff Keith Salinas is awarded $10,000 as payment for services he performed for the class;

5. The Service Payments to the Opt-In Plaintiff Deponents are approved. Opt-In Plaintiffs Javier Franco, Melinda Gonzalez, Jamie Foley, Willie Thomas, Danielle

20

Gorman, Kevin Monroe, Will Armstrong, John Ballay, Darcell Ellis and Lou Debella are awarded $500 each as payments for services they performed for the class;

6. Class Counsel's request for their reasonable attorneys' fees of $880,000, which is forty percent of the settlement fund, is approved. The attorney's fees shall be distributed to Class Counsel in accordance with the Settlement Agreement;

7. Class Counsel's request for reimbursement of their reasonable litigation costs, totaling $193,922.37, is approved, and shall be distributed to Class Counsel by Angeion Group in accordance with the Settlement Agreement.

8. Angeion Group shall be paid its reasonable fees and costs incurred in administering the settlement from the Settlement Fund; and

9. This matter is dismissed with prejudice without costs or fees to either side, except as provided in the Settlement Agreement and the Court's Order.

Special Master Hunter Hughes

21